NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHOENIX GROUP OF COMPANIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>INEOS VINYLS ITALIA, S.P.A.,<br><br>Defendants. | **OPINION**<br><br>Civ. No. 07-4310 (WHW) |

**<u>Walls, Senior District Judge</u>**

Plaintiff Phoenix Group of Companies, LLC ("Phoenix") has moved for summary judgment. The motion is unopposed. The motion is granted.

### FACTS AND PROCEDURAL BACKGROUND

Phoenix is a New Jersey company in the business of buying and selling chemical process plants, equipment, and machinery. (Pl.'s Compl. & Jury Demand ("Compl.") ¶¶ 1-2; Def.'s First Amended Answer, Affirmative Defenses, & Jury Demand ("Amended Answer") ¶¶ 1-2.) Ineos Vinyls Italia ("Ineos") is an Italian company that owned a chemical process facility in Ravenna, Italy that included a vinyl chloride monomer ("VCM") plant and a polyvinyl chloride ("PVC") plant. (Compl. ¶¶ 4-5; Amended Answer ¶¶ 4-5.)

The two companies entered into a Non-Circumvention Agreement (the "agreement") regarding the VCM and PVC plants. (Compl. ¶ 6; Amended Answer ¶ 6.) In this agreement, Phoenix agreed to purchase and then resell Ineos's chemical process facility and the equipment

1

therein. (Def.'s Notice of Removal Ex. A. (agreement) at 1.) In exchange, Ineos agreed not to interact with Phoenix's customers, except through Phoenix. Any of Phoenix's customers which had had previous interactions with Ineos would be exempt from the agreement's restrictions. (Id.) Specifically, the Agreement stated:

> Covenant of Non-Circumvention. INEOS hereby agrees not to, in any way whatsoever, directly or indirectly, in writing or orally, circumvent Phoenix by soliciting, contacting, having discussions with, dealing with or contracting with the Customers in connection with the Equipment, or any other transaction substantially similar to the Equipment sale transaction without the knowledge and consent of PHOENIX, within 3 years of the date of this Agreement.

(Agreement at 1-2.) On January 20, 2006, Phoenix informed Ineos by letter of the names of five of its customers, in accordance with the procedures outlined in the agreement. (Id.; Cert. of Steven J. Fram, Esq. ("Fram Cert.") Ex. C (Pl.'s Request for Admissions) at Ex. A. (Letter from William D. Spector, President, Phoenix, to Diego Carmello, President, Ineos (Jan. 20, 2006)).) Ineos responded by email correspondence on February 6, 2006, informing Phoenix that it had had earlier dealings with one of these customers, Engro. (Fram Cert. Ex. C at Ex. C (E-mail from Diego Carmello, President, Ineos, to Jesse Specter, Vice President, Phoenix (Feb. 6, 2006)).) Under the terms of the agreement, Engro was exempted from the agreement's communications restriction provision, but the four other listed customers remained subject to the agreement.

Ineos said nothing about another company on Phoenix's list of customers, Trust Chemicals of Egypt ("TCI"). (Pl.'s Statement of Material Facts in Supp. of Pl.'s Mot. for Summ. J. ¶ 9; Amended Answer at Second Affirmative Defense ¶ 3.) Phoenix argues that, because Ineos had not had previous dealings with TCI, TCI was subject to the communications restriction in the agreement. Ineos, in its answer, responds that TCI was not subject to the agreement's restriction

2

because TCI was not genuinely a customer of Phoenix, despite Phoenix's representation. (Amended Answer at Second Affirmative Defense ¶ 4 ("Contrary to Phoenix's representation to INEOS, [TCI] later stated that [TCI] was only working with International Process Plants . . . with respect to INEOS's VCM plant, and, thus, [TCI] was not a customer of Phoenix with respect to the sale and purchase of INEOS's VCM plant.").)

Less than two weeks after Ineos's email to Phoenix regarding Engro, Ineos began to work with a competitor of Phoenix, International Process Plants ("IPP"), to sell the VCM plant. (Fram Cert. Ex. J (Rege Dep. 101:4-102:8, July 8, 2008).) Jesse Spector, a Vice President of Phoenix, learned that IPP had represented to TCI that IPP had an exclusive on the Ineos Equipment. (Fram Cert. Ex. C at Ex. G (E-mail from Jesse Spector, Vice President, Phoenix, to Diego Carmello, President, Ineos, Mar. 30, 2006).) Ultimately, Ineos sold the equipment to IPP, which resold it to TCI, making a profit of $1.181 million. (Fram Cert. Ex. O (Rege Dep. 20:22-21:25; 59:23-60:12); Fram Cert. Ex. Q (Gale Dep. 41:13-42:7, Jan. 26, 2009); Fram Cert. Ex. P (IPP Invoice, Gale Ex. 3)).

Phoenix sued Ineos in the Law Division of the Superior Court of New Jersey, Middlesex County on July 24, 2007 for breach of contract and breach of the duty of good faith and fair dealing. <u>Phoenix Group of Companies, LLC v. Ineos Vinyls Italia, SPA</u>, Civ. No. L-6529-07 (N.J. Super. Ct. Law Div. July 24, 2007). Ineos removed the suit to this Court on September 7, 2007, on the basis of diversity jurisdiction, asserting as an affirmative defense that Phoenix breached the agreement and the duty of good faith and fair dealing by misrepresenting that TCI was one of Phoenix's customers when it was not. (Def.'s Notice of Removal, Sept. 7, 2007.) Discovery followed, and Phoenix moved for summary judgment on June 24, 2009. (Pl.'s Mot.

for Summ. J., June 24, 2009.) Although Ineos's time to submit opposition papers was extended to December 7, 2009 (Letter Order, Oct. 8, 2009), Ineos has not opposed the motion.

## STANDARD OF REVIEW

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A factual dispute is material if, under the substantive law, it would affect the outcome of the suit, and it is genuine if a reasonable jury could return a verdict for the non-moving party. See Anderson, 477 U.S. at 248. The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive a motion for summary judgment, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005) (internal quotations omitted). The non-moving party must go beyond the pleadings and, by affidavits or other evidence, designate specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 323-24. "Conclusory

statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment." Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue of fact for trial. See Anderson, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. See id. at 255; Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

Where the issue is one of contract interpretation, a court "can grant summary judgment . . . if the contractual language being interpreted is subject to only one reasonable interpretation." Emerson Radio Corp. v. Orion Sales, Inc., 253 F.3d 159, 163-64 (3d Cir. 2001) (internal quotation marks removed).

The District of New Jersey requires movants to submit, along with their moving papers, a statement setting forth material facts. L. Civ. R. 56.1. This Rule also provides that "[t]he opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts . . . ; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." Id.; see also Hill v. Algor, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000) ("[F]acts submitted in the statement of material fact which remain uncontested by the opposing party are deemed admitted."). Under this rule, all parties involved in a motion for summary judgment are affirmatively required to file statements of uncontested facts. See L. Civ. R. 56.1 cmt. d (citing Bowers v. NCAA, 9 F. Supp. 2d 460, 476 (D.N.J. 1998)). It is clearly established law in this district that failure to file opposition papers may result in the court's acceptance of all of the facts in the movant's 56.1 Statement as uncontroverted.

5

Nevertheless, "[a] movant is not automatically entitled to summary judgment simply because the non-movant fails to oppose the motion." Mitchell v. N.J. Lottery, Civ. No. 04-896, 2007 WL 2462620, at *2 (D.N.J. Aug. 28, 2007) (citing Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990)); Union of Orthodox Jewish Congregations v. Fleet Techs., Civ. No. 05-4605, 2008 WL 163583, at *4 (D.N.J. Jan. 16, 2008) (Walls, J.) ("To date, Defendant has failed to file any response with the Court.  Nevertheless, the Court will not grant the entry of summary judgment without considering the merits of Orthodox Union's unopposed motion.").  The court must examine the pleadings to ensure that the motion is appropriate – that is, that on the basis of the statement of facts offered by the movant, the movant is entitled to judgment as a matter of law.  Id. at 2-3.

## DISCUSSION

Because Ineos has failed to respond to Phoenix's motion for summary judgment as required, this Court accepts the contents of Phoenix's statement of uncontested facts as true.

The agreement between Ineos and Phoenix is clear and unambiguous.  Under the terms of the contract, Phoenix was obligated to provide a list of customers to Ineos.  Ineos was then obligated not to contact these listed customers in any way, either directly or indirectly, unless it had a previous relationship with a customer.  Phoenix provided the list of customers, which included TCI, to Ineos.  Ineos did not provide written evidence to Phoenix claiming to have had previous dealings with TCI.  Despite this, Ineos circumvented Phoenix by indirectly dealing with TCI, a listed customer, in violation of the agreement.

The only issue of material fact here is whether TCI was a customer of Phoenix.  Both parties agree that TCI was on Phoenix's list of customers.  (Def.'s Amended Answer ¶ 11.)

Ineos argues in its Amended Answer, however, that TCI had a Non-Circumvention Agreement with PPI, and so could not have been one of Phoenix's customers.

The agreement provides guidance. To be a "Customer" of Phoenix requires only that Phoenix have located TCI as one of several "prospective purchasers . . . for Ineos's VCM and PVC plants . . . owned by and presently offered for sale by INEOS to PHOENIX." (Notice of Removal Ex. A. (agreement) at 1-2.) Phoenix's letter to Ineos including the names of Phoenix's five customers further demonstrates that the definition of customer as understood by the parties was informal: "In accordance with the Non-circumvention Agreement, I have listed below the names of the companies we are working with who have an interest in your VCM and PVC plants in Ravena [sic]." (Pl.'s Mot. for Summ. J. Ex. A.)

Phoenix has demonstrated that TCI was a Phoenix customer under the terms of the agreement, and Ineos has not offered contrary evidence beyond its conclusory assertions. Jesse Specter, a Vice President at Phoenix, sent a letter to Diego Carmello, the President of Ineos:

> It has come to my attention that IPP of New Jersey USA has been reporting to one of our registered customers (Trust Chemicals Group-Egypt) that they are exclusively offering the plants from the Ineos Ravena [sic], Italy site. I appreciate you letting IPP know that Ineos has signed an Agreement to allow Phoenix Group to exclusively work with Trust Chemicals Group for the sale of the plants and that IPP can not bring Trust Group to the site for an inspection.
>
> We are taking Trust Chemicals Group for an inspection of certain Solving assets on 3rd April and would like to schedule a plant visit with Trust Chemicals Group in the next week at your Ravena [sic] site. So I appreciate you clearing up this matter immediately with IPP.

(Pl.'s Request for Admissions Ex. G (E-mail from Jesse Specter, Vice President, Phoenix to Diego Carmello, President, Ineos (Mar. 30, 2006)).) Furthermore, Specter indicated in an email to Carmello on March 31, 2006 that Phoenix had had a relationship with Trust Chemicals since October, 2005. (Fram Cert. Ex. C at Ex. H (E-mail from Jesse Spector, Vice-

7

President, Phoenix, to Diego Carmello, President, Ineos, Mar. 31, 2006).)  That Phoenix had plans to show TCI the plants is itself enough to establish that TCI was a customer of Phoenix under the loose definition of the agreement; that Phoenix had an ongoing relationship with TCI from October, 2005 cinches it.  Ineos has offered no evidence beyond its pleadings to support its contrarian stance.  See Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  This Court finds that TCI was a customer of Phoenix, in accordance with the definition in the agreement, as a matter of law.

There is no other issue of material fact to require consideration by a jury.  TCI was a customer of Phoenix, and Ineos received notice of this fact by letter.  Ineos agreed not to circumvent Phoenix by contacting Phoenix's customers directly or indirectly.  Ineos violated this provision of the agreement by selling its equipment to IPP, which resold it to TCI.

Phoenix lost the benefit of that deal, and is entitled to the amount of profit enjoyed by IPP – that is, €.9 million, which represents the amount that TCI paid IPP for the equipment (€1.1 million) less the amount that IPP paid Ineos for the equipment (€.2 million).  (Pl.'s Statement of Material Facts ¶¶ 14-15.)  At the time of the transaction, €.9 million was equivalent to $1.181 million, using the conversion rate of $1.30/€.  (Pl.'s Statement of Material Facts ¶ 15.)  The terms of agreement provide that in the event of a breach by Ineos, Phoenix is "entitled to liquidated damages equal to three (3) times the maximum monies that Phoenix would realize from such Equipment sale transaction plus any and all expenses, including attorney's fees and expenses, in the recovery of said funds." (Mot. for Summ. J. Ex. A ¶ 2.)  Thus, under the terms of the agreement, Phoenix is also entitled to expenses incurred in pursuing the present action.  Phoenix has acknowledged its right to receive treble damages, but has asked for only the amount it would have received but for the breach.

8

Phoenix's motion for summary judgment is granted, and Phoenix is ordered to submit an affidavit in accordance with Local Civil Rule 54.2 outlining the attorney's fees expended and any other expenses incurred in pursuing this action, as well as the amount of interest to which it believes itself entitled.

## CONCLUSION

For the foregoing reasons, Phoenix's motion for summary judgment is granted.

May 11, 2010                                         **/s William H. Walls**
                                                     United States Senior District Judge